AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

|  |  |  |
|---|---|---|
| *Plaintiff(s)* <br> v. <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

                                                                                                  *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*
_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHEETZ, INC., | ) |
| Plaintiff, | ) No.: |
| v. | ) |
| REDBOX AUTOMATED RETAIL, LLC, | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Sheetz, Inc. ("Sheetz"), by and through its undersigned counsel, Buchanan Ingersoll & Rooney PC, files this Complaint against Defendant Redbox Automated Retail, LLC ("Redbox" and where together with Sheetz, the "Parties"), and in support thereof, avers as follows:

### I. INTRODUCTION

Sheetz and Redbox were parties to an operating agreement, whereby Sheetz permitted Redbox to place Redbox-branded Media Kiosks ("Kiosks") at certain convenience store properties in exchange for quarterly commission payments ("Commissions") based on Kiosk rentals. Following over a year of unpaid Commissions by Redbox, coupled with non-responsiveness to Sheetz' demand letters and notice to cure, Sheetz terminated its operating agreement with Redbox, effective November 3, 2023. Redbox has acknowledged and admitted to its non-payment of the Commissions it owes to Sheetz, but Redbox has ignored Sheetz' demand for removal of its Kiosks that remain at sixty-four (64) Sheetz' convenience stores. Moreover, Redbox continues to stock its Kiosks and continues to advertise its Kiosks located at Sheetz' stores on its website. Sheetz therefore seeks a declaration that the Kiosks are legally abandoned subject to disposal by Sheetz, together with an award of the past-due Commissions and other damages incurred by Redbox's material breaches of the operating agreement and failure to remove its Kiosks upon termination.

## II. PARTIES

1. Plaintiff Sheetz is a Pennsylvania corporation with its principal office located at 5700 6th Avenue, Altoona, Pennsylvania 16602.

2. Defendant Redbox Automated Retail, LLC is a Delaware Limited Liability Company and a subsidiary of Chicken Soup for the Soul Entertainment, Inc. Redbox has a principal place of business at 1 Tower Lane, Suite 800, Oakbrook Terrace, Illinois 60181.

3. The sole member of Redbox is Redwood Intermediate, LLC, a Delaware Limited Liability Company with a principal place of business at 1 Tower Lane, Suite 800, Oakbrook Terrace, Illinois 60181.

4. The sole member of Redwood Intermediate, LLC is RB Second Merger Sub LLC, a Delaware Limited Liability Company with its principal place of business at 132 E. Putnam Avenue, Cos Cob, Connecticut 06807.

5. The sole member of RB Second Merger Sub LLC is Chicken Soup for the Soul Entertainment, Inc., a Delaware Corporation with a principal place of business at 132 E. Putnam Avenue, Cos Cob, Connecticut 06807.

## III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a), which grants district courts original jurisdiction over civil actions where diversity exists between two Parties with a controversy exceeding $75,000 in value.

7. Under 28 U.S.C. § 1332(b), Sheetz is deemed to be a citizen of Pennsylvania for the purpose of jurisdiction.

8. For the purpose of diversity jurisdiction, "the citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007).

9. As described in Paragraphs 2-5, *supra*, Redbox is a citizen of Connecticut, Delaware, and Illinois based on the citizenship of its members.

10. The amount in controversy exceeds $75,000, as set forth in greater detail herein.

11. Jurisdiction is proper in this Court because the Agreement between Plaintiff and Defendant provides for jurisdiction in DuPage County, Illinois, which is a county encompassed by the United States District Court for the Northen District of Illinois, and Redbox is a citizen of Illinois.

## IV. FACTUAL BACKGROUND

12. Sheetz is a family-owned, commercial chain of over 700 convenience stores offering custom food, beverages, convenience store items and gasoline across Pennsylvania, West Virginia, Maryland, Ohio, Virginia and North Carolina.

13. Redbox offers self-service movie rentals through Kiosks installed at various retail locations and convenience stores, including many Sheetz stores.

14. Redbox contracts with various retail property owners who agree to host the Kiosks for use by their patrons in exchange for commission payments.

### The Kiosk Operating Agreement Between Sheetz and Redbox

15. On December 12, 2018, Sheetz entered into an Agreement with Redbox, whereby Redbox installed Kiosks at various Sheetz locations in consideration for quarterly Commission payments to Sheetz based on each Kiosk's rental revenue. A true and correct copy of the

3

Agreement is incorporated herein as **Exhibit 1**, and because of confidentiality provisions in the Agreement, Sheetz has served upon Redbox, but has not filed, the Agreement.

16. Under the terms of the Agreement, Redbox installed movie and video game Kiosks in designated areas at nearly eighty (80) Sheetz locations. The specific locations at the time of contract are detailed at Exhibit 1, p. 3.

17. The Parties later extended the term of the Agreement to January 31, 2024 through a First Amendment to Kiosk Operating Agreement (the "Amendment") (together with the Agreement, the "Operating Agreement"). A true and correct copy of the Amendment is incorporated herein as **Exhibit 2**, and because of confidentiality provisions applicable to the Amendment, Sheetz has served upon Redbox, but has not filed, the Amendment.

18. Pursuant to the Operating Agreement, Sheetz was to receive commission payments "within thirty (30) days of the end of each calendar quarter" based on established percentages per Kiosk for movie rentals, video game rentals,[1] and previously-viewed media for direct sale from the Kiosks. *See* Exhibit 1 at the Summary Page and Section 7.

19. For several years, in accordance with the Operating Agreement, Redbox sent Sheetz quarterly statements detailing the Commissions owed (the "Commission Statements"), and the Commissions were then paid to Sheetz.

### Redbox's Breach of the Operating Agreement

20. Beginning in the Fourth Quarter of 2022, however, Redbox sent only Commission Statements to Sheetz and ceased making the Commission payments. A true and correct copy of

---

[1] The Amendment deleted all aspects of Video Games, "as Redbox no longer offers Video Games for rental or sale." Exhibit 2 at ¶ 2. This change was effective on February 1, 2022.

4

the transmittal of the Fourth Quarter 2022 Commission Statement from Redbox is attached and incorporated herein as **Exhibit 3.**

21. This continued through the First and Second Quarters of 2023. True and correct copies of the transmittals of the First and Second Quarter 2023 Commission Statements from Redbox are attached and incorporated herein as **Exhibits 4 and 5.**

22. In August 2023, Sheetz identified the non-payment of the Commissions and corresponded with Jason Whalum, its Account Manager at Redbox, to demand prompt payment of the overdue Commissions.

23. In response to Sheetz' demand for payment of the overdue Commissions, Mr. Whalum acknowledged the delinquency, admitting that Redbox was "**aware of the non-payment, and we understand how important this issue is to the Sheetz Family. Leadership within the parent company have been developing a plan to resolve the cashflow issues. My hope is this will be resolved soon.**" (Emphasis added). This correspondence is attached and incorporated herein as **Exhibit 6**.

24. Despite these assurances from the Redbox Account Manager, Redbox continued only sending Commission Statements to Sheetz without making the Commission payment in the Third Quarter of 2023. A true and correct copy of the transmittal of the Third Quarter 2023 Commission Statement from Redbox is attached and incorporated herein as **Exhibit 7.**

25. Thus, by Redbox's own admission as set forth in its Commission Statements, the past-due, unpaid Commissions were in excess of $16,484.27 as of September 2023. *See* Exhibits 3-5 and 7.

**Sheetz Terminates the Operating Agreement**

26. In the event of a material breach of the Operating Agreement, Section 9.2 permits termination for cause by either party, subject to a thirty (30) business day cure period. *See* Exhibit 1 at Section 9.2.

27. On September 18, 2023, Sheetz sent Redbox a letter giving notice of the material breach due to non-payment of Commissions and notifying Redbox of its intent to terminate the Operating Agreement for material breaches related to non-payment and a failure to remove one of the Kiosks (the "Cure Notice").[2] A true and correct copy of the Cure Notice is attached and incorporated herein as **Exhibit 8**.

28. Redbox failed to cure its material breaches of the Operating Agreement within thirty (30) business days of Sheetz' Cure Notice.

29. Accordingly, Sheetz proceeded with a notice of termination on November 2, 2023 (effective as of November 3, 2023) (the "Termination Letter"). A true and correct copy of the Termination Letter is attached and incorporated herein as **Exhibit 9**.

30. The Termination Letter directed removal of all remaining Kiosks at Sheetz stores by December 3, 2023, one month after the termination of the Operating Agreement. Still, Sheetz received no response from Redbox.

31. Thereafter, by and through legal counsel, Sheetz sent Redbox a letter demanding removal of all Kiosks and payment of the overdue Commissions by January 15, 2024 (the "Final

---

[2] Sheetz requested Redbox's removal of a Kiosk at Sheetz Store No. 248 at 2721 Salt Springs Road, Girard, Ohio pursuant to Section 6.2 of the Operating Agreement due to a planned rebuild. The rebuild was scheduled for September 27, 2023, but Redbox failed to remove the Kiosk. Sheetz therefore incurred labor, moving, storage costs related to the Kiosk.

Demand"). A true and correct copy of the Final Demand is attached and incorporated herein as **Exhibit 10**.

32. The Final Demand gave notice that unless Redbox removes all Kiosks on or before January 15, 2024, Sheetz will treat such failure as Redbox's intent to relinquish title to the Kiosks and/or its indifference as to the fate of the Kiosks and will proceed to treat all of the Kiosks as legally abandoned.

33. This Final Demand was directed to Redbox as well as to its related entities including Redbox Entertainment, Inc. and Chicken Soup for the Soul Entertainment, Inc. *See* Exhibit 10. Still, there has been no response; no payment; and no removal of the Kiosks.

34. Instead, on January 31, 2024, Redbox sent Sheetz a Fourth Quarter 2023 Commission statement—without actual payment of the Commissions. A true and correct copy of the transmittal of the Fourth Quarter 2023 Commission Statement from Redbox is attached and incorporated herein as **Exhibit 11.**

35. That brings the overdue Commissions to an amount in excess of $18,889.28. *See* Exhibits 3-5, 7 and 11.

36. Sheetz has also incurred labor, transport and storage costs for Kiosks at various locations where Sheetz is undertaking rebuild activities, further increasing costs to Sheetz.

37. What is more, Redbox has continued to stock its Kiosks on various Sheetz' properties, and as of the filing of this Complaint, it continues to advertise its Kiosks located at Sheetz's stores on its website: https://www.redbox.com/locations. A representative example of one location advertised is attached and incorporated herein as **Exhibit 12**.

38. Redbox has no right or privilege to enter Sheetz' stores for its commercial purposes following the termination of the Operating Agreement, and the Kiosks must be removed.

7

## COUNT I: DECLARATORY JUDGMENT

39. The averments of the preceding paragraphs are incorporated as if fully set forth.

40. Since October 2022, Redbox has failed to pay the Commissions owed to Sheetz.

41. Redbox has been non-responsive to Sheetz' inquiries, requests and demands.

42. Sheetz terminated the Operating Agreement effective November 3, 2023.

43. The Operating Agreement provides that Redbox will remove the Kiosks within thirty (30) days of effective termination of the Operating Agreement:

> "Upon the expiration or the termination of this contract, in whole or with respect to any individual Site, **we will (a) remove the Kiosks, (b) surrender possession of the Premises, and (c) return the Premises in good clean condition**, subject to normal and reasonable wear and tear related to the installation, use, operation and removal of the Kiosks. Notwithstanding the foregoing, **we will fix or repair bolt holes due to Kiosk installation and removal**. We will consult with you to mutually agree upon a reasonable schedule to accomplish these tasks, **which should not exceed thirty (30) days from expiration or termination**." Exhibit 1, Section 6.7. (Emphasis added.)

44. Despite these obligations and express demand by Sheetz, Redbox has failed to remove the Kiosks; failed to surrender possession of the Premises; failed to return the Premises in good clean condition; and failed to fix or repair bold holes due to Kiosk removal. Additionally, Redbox has not responded to Sheetz' demands for removal of the Kiosks and has made no effort to consult with Sheetz to mutually agree upon a reasonable schedule to accomplish the removal-related tasks.

45. Even if the Operating Agreement was not terminated on November 3, 2023, it still terminated by operation of its own terms as of January 31, 2024. *See* Exhibit 2. Despite even the passage of that expiration date, Redbox has not removed the Kiosks.

46. Moreover, Redbox has continued to stock certain Kiosks and advertise numerous Sheetz locations for accessing Kiosks in the "Find a Kiosk" section of its website.

47. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Sheetz is procedurally entitled to Declaratory relief, permitting this Court to declare the rights and legal obligations of the Parties. 28 U.S.C. § 2201(a).

48. Declaratory relief is appropriate in this circumstance as a real, present, and immediate controversy exists between the Parties that is separate and distinct from Sheetz' request for damages.

49. As described in this Complaint, Sheetz has an immediate and ongoing interest in removing the Kiosks and re-possessing its property for, *inter alia*, other uses, leases and/or profit opportunities.

50. Sheetz therefore seeks a declaration of its rights following termination of the Operating Agreement in order to repossess its property presently being occupied by the Kiosks.

**WHEREFORE**, Sheetz respectfully requests that this Honorable Court enter declaratory judgment in its favor (and against Defendant Redbox) declaring as follows:

A. The Kiosks are legally abandoned;

B. Sheetz may dispose of any and all Redbox Kiosks remaining on its properties;

C. The Operating Agreement was terminated effective November 3, 2023;

D. Redbox must immediately cease further stocking of the Kiosks; and

E. Redbox must immediately cease advertising its Kiosks at Sheetz' stores.

## COUNT II: BREACH OF CONTRACT

51. The averments of the preceding paragraphs are incorporated as if fully set forth.

52. Pursuant to the Operating Agreement, Sheetz was entitled to quarterly payments of Commission from Redbox, but beginning in the Fourth Quarter of 2022, Redbox ceased all Commission payments to Sheetz.

53. To date, over $18,889.28 in past-due Commission payments have accrued. This total does not account for unpaid Commissions that accrued in the first quarter of 2024 while the Kiosks remain on Sheetz' property.

54. Redbox has further failed to comply with its obligation to remove the Kiosks within thirty (30) days of effective termination of the Operating Agreement as well as to return the premises in good clean condition, including but not limited to repair of the bolt holes due to Kiosk removal. *See* Exhibit 1, Section 6.7.

55. This failure is resulting in estimated costs of $74,953.60 in order for Sheetz to handle the on-site Kiosk removal and associated repair work ($1,171.15 per store).

56. By failing to comply with its post-termination obligations for Kiosk removal and repair of the premises, Redbox also continues to occupy leasable portions of sixty-four (64) Sheetz locations.

57. Sheetz has now forfeited the ability to use the occupied space for new leases or other profit-generating opportunities since the termination of the Operating Agreement. Redbox requires approximately 27.1 square feet of space for each Kiosk, including the space for the required Americans with Disabilities Act (ADA) approach. This loss of merchandisable space is resulting in loss of approximately $0.63 per square foot, per day—or $512.19 per Kiosk, per month. Extrapolating that amount over the 64 stores with Kiosks remaining from November 3, 2023 to the present, the Kiosks have been occupying over $130,000.00 of Sheetz' merchandisable space, which continues to accrue until the Kiosks are removed.

58. The lost opportunity to benefit from the use of Sheetz's property is a direct consequence of Redbox's material breaches; these damages are presumed to "follow the type of wrong complained of." *Damages defined*, 1 Nichols Ill. Civ. Prac. § 4:14 (July 2023).

59. Here, Sheetz' damages are a "direct and foreseeable consequence of defendant's breach." *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 67 (Ill. 1987). As evidenced by Section 2.1 of the Operating Agreement, which acknowledges Sheetz' ability to profit from the use of its property, "plaintiff's profits formed the very basis of its contract with defendant; it cannot be said that profits were only collateral to the contract." *Id*.

60. Due to Redbox's breach of the Operating Agreement, Sheetz has incurred damages arising from, *inter alia*, the unpaid Commissions; labor, transport and storage costs for failure to move Kiosks where Sheetz stores were subject to rebuild; loss of beneficial use of its property due to Redbox's failure to remove the Kiosks in sixty-four (64) stores; Redbox's failure to repair the premises upon removal of Kiosks in sixty-four (64) stores; and other damages, which in total, are in excess of $75,000.

**WHEREFORE,** Sheetz respectfully requests that this Honorable Court enter judgment in its favor (and against Defendant Redbox) as follows:

A. Awarding money damages in favor of Sheetz, and against Redbox, for all losses and damages suffered as a result of the acts complained of herein, in an amount to be proven in excess of $75,000;

B. Awarding Sheetz its costs and expenses incurred in this action, including interest and reasonable attorneys' fees; and

C. Such other relief as this Court deems just and proper.

### COUNT III: ACCOUNT STATED

61. The averments of the preceding paragraphs are incorporated as if fully set forth.

62. When the missed Commissions were identified by Sheetz, the Parties exchanged emails discussing when payment would be made.

63. In an email dated August 28, 2023, Redbox expressly acknowledged its nonpayment and set forth overdue amounts as follows:

- 4Q22 - $4,863.64
- 1Q23 - $3,775.28
- 2Q23 - $4,151.73

*See* Exhibit 6.

64. Additionally, Redbox has directly emailed Sheetz statements on its earned Commissions at the end of each quarter. *See* Exhibits 3-5, 7 and 11.

- 4Q22 - $4,863.64
- 1Q23 - $3,775.28
- 2Q23 - $4,151.73
- 3Q23 - $3,693.62
- 4Q23 - $2,405.01

65. This acknowledgment of the amount, coupled with Redbox's statement that it was working to resolve the non-payment, constitutes an implied promise to pay the as-stated, overdue Commissions.

66. To date, Redbox has not made any payment on its overdue Commissions and Sheetz is entitled to recover the promised payment of the undisputed Commissions from Redbox.

**WHEREFORE**, Sheetz respectfully requests that this Honorable Court enter judgment in its favor (and against Defendant Redbox) as follows:

A. Awarding the past-due Commissions from the Fourth Quarter of 2022 through the Fourth Quarter of 2023 in the undisputed amount of $18,889.28;

B. Award interest on the overdue Commissions; and

  C. Such other relief as this Court deems just and proper.

## COUNT IV: TRESPASS

67. The averments of the preceding paragraphs are incorporated as if fully set forth.

68. As acknowledged in the Parties' Operating Agreement, Sheetz possesses the real property on which the Redbox Kiosks were placed. *See, e.g.*, Exhibit 1 at Section 1 and 2.1.

69. Under the terms of the Operating Agreement, Redbox (through its Kiosks) physically continues to occupy portions of Sheetz property at sixty-four (64) locations.

70. The Operating Agreement terminated, but Redbox has not removed its Kiosks despite repeated demand by Sheetz.

71. By refusing to remove its Kiosks, Redbox has exceeded the scope of its prior authorization to occupy the Sheetz' premises.

72. Redbox further commits continuing trespasses against Sheetz by sending its patrons, employees, agents, and/or contractors to use, stock and/or service the Kiosks.

73. Redbox is causing persistent and continuous intrusion over and upon Sheetz' property, and thus, is directly interfering with Sheetz' complete use, enjoyment, and possession thereof.

74. Given the Parties' prior contractual relationship, the termination of the Operating Agreement, and the nature of Redbox's continued occupancy of Sheetz' premises, Redbox knew or should have known with a high degree of certainty that failure to remove its Kiosks upon termination is intrusive and unlawful.

75. Sheetz is therefore entitled to past and present damages for Redbox's continuing trespass arising from the deprivation of its property's use and the cost to repair and restore its property to its previous condition.

**WHEREFORE**, Sheetz respectfully requests that this Honorable Court enter judgment in its favor (and against Defendant Redbox) as follows:

A. Awarding money damages against Redbox, in favor of Sheetz for all losses and damages suffered as a result of the acts complained of herein in an amount to be proven in excess of $75,000;

B. Awarding Sheetz its costs and expenses incurred in this action, including interest and reasonable attorneys' fees;

C. Ordering that Redbox, its personnel, agents and contractors are prohibited and enjoined from entering Sheetz property for any further use, stocking or servicing of the Kiosks; and

D. Such other relief as this Court deems just and proper.

## COUNT V: UNJUST ENRICHMENT

76. The averments of the preceding paragraphs are incorporated as if fully set forth.

77. The Operating Agreement terminated on November 3, 2023.

78. Despite the termination, Redbox has failed to cease its operation of the Kiosks on Sheetz' property.

79. To date, Redbox continues to benefit from its use of Sheetz' property for its Kiosks without any ongoing contractual relationship or compensation to Sheetz.

80. It is unjust for Redbox to retain the benefit of this use, particularly in light of Sheetz' termination of the Operating Agreement and repeated demands that Redbox remove the Kiosks.

Case: 1:24-cv-01693 Document #: 1 Filed: 02/29/24 Page 17 of 17 PageID #:17

81.     Sheetz is entitled to collect Commission payments, in a quasi-extension of the Operating Agreement, for the duration of Redbox's continued occupation of Sheetz' premises and operation of its Kiosks thereon spanning from November 3, 2023 to the present.

**WHEREFORE**, Sheetz respectfully requests that this Honorable Court enter judgment in its favor (and against Defendant Redbox) as follows:

A.  Awarding compensation to Sheetz for Commissions that have accrued in an amount to be proven from November 3, 2023 until the Kiosks are removed or disposal of the Kiosks is authorized; and

B.  Awarding compensation to Sheetz for the costs of removal of the Kiosks and repair to the Sheetz' locations in an amount to be proven in excess of $75,000.

C.  Such other relief as this Court deems just and proper.

Dated: February 29, 2024

BUCHANAN INGERSOLL & ROONEY PC

By: _____
Robert L. Wagner
Ill. I.D. No. 6276109
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA  15219-4413
Tel:   (412) 562-8800
Fax:   (412) 562-1041
robert.wagner@bipc.com

*Attorney for Plaintiff Sheetz, Inc.*